## CURRIER v. BAKER.

In 1859, the N. H. Savings Bank recovered a judgment for $9,933.73, against the M. C. & M. W. and eleven others, on a promissory note signed by said M. C. & M. W. as principal, and the other eleven defendants as sureties. April 22, 1859, this judgment was satisfied for $1,974.25, by a levy on the property of C. F., one of the sureties; and April 28, 1859, in the further sum of $421.67, by a levy on the property of T., another of the sureties. Before December 10, 1864, the M. C. & M. W. had paid the balance of said judgment, excepting about $3,500. Before that day, also, five of the sureties had died, and their estates had been settled in the insolvent course; and three more had left this State, leaving only the plaintiff, the defendant, and M., of all the sureties, within the State. On said December 20, 1864, by a compromise with the bank, the plaintiff and M. paid ·the bank $3,000 in full satisfaction of the balance of the judgment, the plaintiff paying $1,800 and M. $1,200. November 28, 1870, B., one of the sureties who had left the State, paid the plaintiff $450 as a contribution towards the amount so paid by him, and the plaintiff thereupon agreed not to call on him for any further contribution on the amount so paid. The defendant has paid nothing, and this suit is to recover contribution of him.

It was *held* (1) that in the absence of evidence of any valid existing claim on the part of the representatives of C. F., the sum collected of him would not be reckoned in determining the basis of contribution; (2) that the settlement and discharge of B. from his liability for contribution to the plaintiff should have the same effect, under the circumstances shown, as would be given to a payment in full by B. to the plaintiff of his share of contribution; (3) that the defendant was liable to the plaintiff for contribution on the basis that the plaintiff, defendant, and M., together with B., who had been released by the plaintiff, should bear equally between them the burden of paying the $3,000 paid December 20, 1864.

Assumpsit, by David Currier against William W. Baker. At the March term, 1859, of the court of common pleas for the county of Merrimack, the New Hampshire Savings Bank, in Concord, recovered judgment and execution against the Manchester Car & Machine Works, Hiram Brown, Ira Bliss, Wilbur Gay, John H. Newman, William W. Baker, George M. Flanders, James Wallace, Luther Farley, John P. Moore, Charles Flanders, and David Currier, for $9,906 debt, and $27.73 costs, upon a note dated July 26, 1855, for $10,000, signed by said Car & Machine Works as principal, and the eleven other defendants as sureties, payable to said bank, with interest. This

judgment was satisfied for $421.67, on April 28, 1859, by levy on the property of said Farley, and on April 22, 1859, it was satisfied for $1,974.25, by levy on the property of said Charles Flanders. The remainder of said judgment was satisfied from the property of said Car & Machine Works prior to December 20, 1864, except about the sum of $3,500 which was then due, at which time said bank agreed, as a compromise with said Currier and said Moore, to accept the sum of $3,000 in full satisfaction of the balance remaining due on said judgment; and this sum was paid by them,—$1,800 by said Currier, and $1,200 by said Moore. On November 28, 1870, said Brown paid said Currier $450 as a contribution toward the amount so paid by said Currier, and said Currier agreed not to call upon the said Brown for any further contribution on the amount so paid by said Currier.

Since the rendition of said judgment, and before the commencement of this suit, said Bliss and Gay have died—said Bliss about 1858, said Gay about 1856—leaving no estate; and said Wallace died about April, 1859, and his estate has been settled as insolvent. The claim of said bank against his estate was not presented to the commissioner. The said Farley and Charles Flanders have died since the levy of said execution on their estates—the said Farley about April 2, 1860, and the said Charles Flanders about April, 1860—and their estates have been settled as insolvent. The claim of said bank was not presented to the commissioner of insolvency on the estate of the said Farley, nor on the estate of said Charles Flanders. The said Brown, Newman, and George M. Flanders, on and ever since Dec. 20, 1864, have resided and still reside without the State of New Hampshire.

On April 11, 1870, the plaintiff brought his action for contribution from the defendant upon the amount so paid by him, and claims that he is entitled to recover one half of the amount so paid by him from said defendant, with interest from the date of said payment.

It is agreed that the proportion that said defendant, Baker, is liable to pay to said Currier be determined by the court upon the above statement of facts.

*L. B. Clough*, for the plaintiff.

By the terms of the note upon which said bank recovered the said judgment, the eleven individuals are co-sureties. The decease of said Bliss and Gay, leaving no estate, and the decease of the said Farley, Wallace, and Charles Flanders, and the settlement of their estate as insolvent, reduces the number of co-sureties to six, since the solvent sureties must bear the burden,—as, in *Henderson* v. *McDuffee*, 5 N. H. 38, it was held that when one of the sureties is insolvent, another who has paid the debt may, in a suit at law, recover of the third a moiety of the sum paid; also, Parsons on Contracts, vol. 2, p. 524; Story's Eq. Jur., vol. 1, sec. 496.

The removal of said Brown, Newman, and George M. Flanders from the

State is equivalent to their insolvency—*Boardman* v. *Paige*, 11 N. H. 431, 440; so that the payment of said $3,000 finally falls upon the three remaining sureties, viz., Currier, Moore, and Baker. They should contribute equally to the payment. *Fletcher* v. *Grover*, 11 N. H. 368; *Boardman* v. *Paige*, 11 N. H. 431; *Currier* v. *Fellows*, 27 N. H. 366.

*S. N. Bell*, for the defendant.

. This being a suit at law for contribution, each surety can be compelled to pay only his aliquot part of the debt. *Coburn* v. *Wheelock*, 34 N. Y. (7 Tiffany) 440; *Cowell* v. *Edwards*, 2 Bos. & Pul. 268; Story's Eq. Jur., vol. 1, sec. 436; *Browne* v. *Lee*, 6 Barn. & Cress. 697; *Norton* v. *Coons*, 2 Seld. (6 N. Y.) 40; *Rogers* v. *Mackenzie*, 4 Ves. 752; *Wright* v. *Hunter*, 5 Ves. 792; *Samuel* v. *Zachery*, 4 Iredell 377; *Aikin* v. *Peay*, 5 Strobh. 15.

And where one surety pays the whole debt, or more than his share, he can compel contributions from his co-sureties only for the amount he has paid in excess of his share. *Lytle* v. *Pope*, 11 B. Mon. 297; *Simmons* v. *Varnum*, 36 Ala. 92; *ex parte Gifford*, 6 Ves. 805; *Fletcher* v. *Grover*, 11 N. H. 368; *Currier* v. *Fellows*, 27 N. H. 366; *Boardman* v. *Page*, 11 N. H. 431. And in this State the rule of apportionment is the same in a suit at law as in equity. *Henderson* v. *McDuffie*, 5 N. H. 38.

The plaintiff in this suit, therefore, can recover only for the excess he has paid above his share. But Brown, one of the sureties, paid to the plaintiff a contribution of $450, and the plaintiff agreed to release him from further contribution. This, if not an absolute discharge as to all the other sureties, was a release of all excess of contribution beyond the sum of $450, and applied to all the co-sureties as well as to Brown, so far as Currier is concerned. *Nicholson* v. *Revill*, 6 Nev. & M. 192, 4 Ad. & E. 675; *Stirling* v. *Forester*, 3 Bligh 591; 1 Story's Eq. Jur., secs. 477, 478, note; *Fletcher* v. *Grover*, 11 N. H. 368; *Miller* v. *Sawyer*, 30 Vt. 412; *Hodgson* v. *Hodgson*, 2 Keen 704; *American Bank* v. *Doolittle*, 14 Pick. 123; *Tuckerman* v. *Newhall*, 17 Mass. 581; *Ward* v. *Johnson*, 13 Mass. 148; *Rowley* v. *Stoddard*, 7 Johns. 207; *McCune* v. *Belt*, 38 Mo. 281; *Blackburn* v. *Beall*, 21 Md. 208; *Alford* v. *Baxter*, 36 Vt. 158.

If, then, the defendant, Baker, actually pays or is liable to pay to his co-sureties, other than Currier, an amount greater than $450, the plaintiff having released such excess cannot recover of the defendant anything in excess of the $450 he has paid or may be liable to pay to his co-sureties. If any loss has occurred by reason of the neglect of Currier to seasonably present the claim for contribution against the estates of those who were insolvent, such loss must be borne by him and be deducted from the amount on which he can obtain contribution. Burge on Suretyship 387; *Onge* v. *Truelock*, 2 Moll. 31. And although the *creditor* may not be obliged to present his claim against the insolvent estate, yet the surety who has paid the debt would be. *Sibley* v. *McAllister*,

8 N. H. 389. As the court hold that the sureties out of the State are to be considered as standing in the same position as if insolvent, then an illustration of the application of the rule for contribution would be —whole debt, without interest, $9,933.73 ; amount paid by Machine Works, $4,037.81 ; amount of discount by bank, $500 ; total, $4,537.81. Farley has paid $421.67 ; Flanders, $1,974.25 ; Currier, $1,350 ; Brown, $450 ; Moore, $1,200 ; total, $5,395.02.

Farley being insolvent, and three of the other remaining sureties being out of the State, the balance, after deducting the sums paid by Farley and Brown, to wit, $871.67, being $4,524.25, must be shared by the four sureties who are or were within the jurisdiction of the court,—C. Flanders, Currier, Moore, and Baker,—to wit, by each, $1,131.06. C. Flanders has over-paid $843.19 ; Currier, $218.94 ; Moore, $68.93 ; total, $1,131.06, to be paid by Baker to the other sureties.

Each thus pays his equal share of the debt, and may be able to collect contribution from the others who are absent. And the court will enforce this rule to prevent the multiplicity of suits. *Walker* v. *Cheever*, 35 N. H. 339.

Currier having released Brown from any excess of contribution above $450, that operates as a release to each of the other sureties, so far as he is concerned, of any excess of contribution that may be required above $450. If, then, on adjustment of the several amounts paid by these sureties, there is any contribution to be paid by Baker to any of the co-sureties exceeding $450 in the whole, Currier cannot enforce any contribution exceeding that sum. Its effect in this suit is, that, if Baker is required to contribute any sum in excess of $450 to any of the sureties who have the right to collect from him, the plaintiff cannot require Baker to pay anything in excess of the $450 that he may have to pay to any of the sureties ; and as he may be required to pay $843.19 to C. Flanders, and $68.93 to Moore, Currier can recover nothing in this suit. Currier, in fact, assumes the payment of all contributions that may be required of any of the sureties in excess of $450. *Wheeler's Estate*, 1 Md. Ch. Decis. 80 ; *Tarr* v. *Ravenscroft*, 12 Gratt. (Va.) 642.

In apportioning the sums to be paid, interest must be cast on the several sums paid by the sureties to the date of the plaintiff's writ, and the apportionment made as of that date.

LADD, J. The whole amount paid to the bank by the sureties, from the first, is $5,395.92. All the adjustment of this sum that has taken place among the sureties is the payment by Brown to the plaintiff, Currier, of $450 ; and Brown is now, and was at that time, out of the State.

Since the original judgment was rendered in 1859, five of the sureties, namely, Bliss, Gay Farley, Charles Flanders, and Wallace, have died, and their estates have been settled as insolvent ; three more, namely, Brown, Newman, and Geo. M. Flanders, had left the State

before the commencement of this suit, leaving but three, namely, Currier, Baker, and Moore, living and within the jurisdiction when the suit was commenced.

Two of the parties not represented here, namely, Charles Flanders and Moore, have paid more than their proportion of the debt. But the levy, by which Charles Flanders was compelled to pay $1,974.25, was made April 22, 1859, more than thirteen years ago; and he died about a year afterwards, that is, twelve years ago, and his estate has been settled. Under these circumstances, in the absence of proof that a valid claim for contribution exists in favor of his legal representatives, we shall assume that there is none. Should it be made to appear that the fact is otherwise, it would be proper that the sum paid by him should be reckoned into the adjustment. But leaving it out, we have only to consider the rights of this plaintiff and defendant as respects the last payment of $3,000, made by the plaintiff and Moore Dec. 20, 1864. Brown was, at the commencement of the suit and at the time of the payment, out of the State, and the plaintiff was not bound to follow him before calling upon the sureties who were within the State for contribution. *Boardman* v. *Paige*, 11 N. H. 431.

What was the effect of the payment by Brown of $450, and the agreement by the plaintiff thereupon not to call on him for any further contribution on the amount he had paid? We think its effect, so far as the other sureties are concerned, must be regarded the same as though he had paid in full the amount of contribution due the plaintiff from him. This was clearly its effect between Currier and Brown; it was an adjustment and compromise by which the claim was extinguished, precisely the same as though it had been paid; and we see no reason why the same effect should not be given it, as regards the other sureties, that it had as between the parties themselves.

The payment of $3,000 was not made until long after the death of Bliss, Gay, Farley, Charles Flanders, and Wallace, and after their estates had been settled as insolvent. It was no more incumbent on one than another of the sureties, who still remained liable, to pay the debt and present his claim to the commissioner on those estates; and we think those estates are not to be taken into account in the adjustment now to be made.

The basis, then, upon which the amount the plaintiff is entitled to recover in this suit is to be reckoned, becomes plain and simple. It is by considering that there were four persons bound to carry the burden of paying the $3,000 equally between them, namely, Currier, Baker, Moore, and Brown. This would make the share of each $750. Currier paid $1,800; deduct his proportionate share, $750, there is left $1,050, which he is entitled to recover by way of contribution from those who have not paid their shares.

But we are to consider that he has received one half of this sum from Brown, because, so far as the other sureties are concerned, his release of Brown was equivalent to payment; and this leaves the other

half, or $525, with interest from the time of the payment, as the sum for which he is to have judgment against the defendant.

It may be remarked that a release by one surety of his claim against another has not the effect, as argued by the defendant's counsel, to discharge all the other sureties from any demand for a greater amount than the sum accepted in satisfaction from the one settled with. It simply operates, like a payment, to release the other sureties from their liability to contribute to make up the share so adjusted. *Hodgson* v. *Hodgson*, 2 Keen 704 ; *Fletcher* v. *Grover*, 11 N. H. 368. The question is not as to the effect of the discharge of one of the sureties by the creditor upon the liability of the others to pay the debt. The authorities upon this subject may be found collected in notes to 1 Story's Eq. Jur., sec. 495, *et seq.*

It is quite probable this adjustment may not be as complete and satisfactory as would have been attainable by a bill in equity, whereby all the parties and all the interests to be affected should have been brought before the court; but, upon the facts agreed, we see no other result possible but that at which we have arrived.

It is obvious that in case Brown remains without the State, or returns and becomes insolvent, the defendant may be liable to settle with Moore upon the basis that there are but three sureties liable to contribution ; and such a result might give rise to further question as to the liability of his plaintiff over for contribution to Moore. But Brown may be followed by Moore or the defendant to another jurisdiction, and his share be collected, or it may be adjusted without suit. These are contingencies which we see no way to provide against in this suit.

In any view that can be taken, it is very plain that the defendant suffers no legal wrong ; for the plaintiff, as well as Moore, might have recovered contribution against him on the basis that but three persons were liable ; and in that event his share would have been $1,000 instead of $750, to which it has been reduced by the adjustment between the plaintiff and Brown.

According to the agreement, there is to be judgment for the plaintiff for $525, and interest from the time of the payment, which is understood to be Dec. 20, 1864.